**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAMADA WORLDWIDE, INC., | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 07-1540 (WHW) |
| | : | |
| RIP MANAGEMENT GROUP CORP., | : | |
| JAVAID M. TARAR and TASNEEM | : | |
| TARAR, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

The dispute in this case arises out of an August 19, 2003 License Agreement between

plaintiff Ramada Worldwide, Inc. ("Ramada"), and defendants RIP Management, Javaid M.

Tarar and Tasneem Tarar for the operation of a Ramada Inn in Du Bois, Pennsylvania.  Plaintiff

Ramada terminated the License Agreement on December 13, 2004 due to defendants' alleged

failure to cure quality assurance defaults and brought this action for breach of contract, Lanham

Act violations, and liquidated damages.  Ramada now moves for summary judgment on first,

third, fifth and seventh counts of its complaint and defendants' counterclaim.  Pursuant to Fed. R.

Civ. P. 78, the Court decides the motion without oral argument.  The motion is granted.

### FACTS AND PROCEDURAL BACKGROUND[1]

---

[1] In resisting summary judgment, defendants first rely on a challenge to an affidavit
submitted by Valerie Capers Workman, Vice President of Franchise Administration at Ramada.
The affidavit states that the statements contained therein are based on Ms. Workman's personal
knowledge as well as her "review of the relevant documents" and attaches key documents in this

NOT FOR PUBLICATION

Plaintiff Ramada, a Delaware Corporation with its principal place of business in

Parsippany, New Jersey, operates a guest-lodging facility franchise system.  (Pl.'s Statement of

Undisputed Facts ("Pl. Facts") ¶ 4.)  Plaintiff does not own or operate any lodging facilities; it

instead licenses its registered trade names, marks and logos ("Ramada marks") to franchisees

who independently own and operate the lodging facilities.  (Id. ¶¶ 5-6.)  Defendant RIP

Management, a Pennsylvania Corporation, was such a franchisee through a license agreement

dated August 19, 2003 ("License Agreement").  (Id. ¶¶ 2, 9.)  Defendants Javaid Tarar and

Tasneem Tarar are principals of RIP Management and citizens of New York.  (Id. ¶ 3.)

The Agreement Between the Parties

---

case, including the License Agreement.  (Workman Aff. ¶ 2, Ex. A.)  Defendants urge this Court
to strike Ms. Workman's affidavit in its entirety and to deny plaintiff's motion because the
affidavit, on which plaintiff heavily relies in support of its motion, is not entirely based on
personal knowledge.  Defendants' objection is without merit as Workman's affidavit is
appropriate summary judgment evidence.  As Vice President of Franchise Administration,
Workman has personal knowledge regarding the License Agreement and issues arising from it.
She is also competent to authenticate business records and establish, from personal knowledge,
that the documents she submits are admissible business records.  As to the objection that her
affidavit contains legal conclusions, the Court is capable of distinguishing legal conclusions from
fact and has done just that in deciding this motion.  None of the cases cited by defendants support
the drastic remedy that defendants seek here.  See Dreyer v. Altchem Environmental Svcs. 2007
U.S. Dist. LEXIS 71048, *7-8 (D.N.J. Sept. 25, 2007) (disregarding affidavit where affiant later
disavowed the entire affidavit through a sworn statement), Dewey v. Volkswagen A.G., 558 F.
Supp.2d 505, 510 n.1 (D.N.J. Mar. 31, 2008) (striking portions of affidavit); Resolution Trust
Co. v. Fidelity & Deposit Co. of Md., 1998 U.S. Dist. Lexis 3431, *4 (D.N.J. Jan. 27, 1998),
rev'd on other grounds, 205 F.3d 615 (3d Cir. 20000) (same).  To the extent that defendants have
disputed or denied plaintiff's statements of fact resting only on their challenge to Workman's
affidavit where reliance on such affidavit was appropriate, the Court deems those denials as
ineffective.  See Port Auth. of N.Y. & N.J. v. Affiliated FM Ins., 245 F. Supp. 2d 563, 572 n.9
(D.N.J. 2001) ("it is incumbent on the responding party to issue a meaningful rejoinder to a given
statement of material fact, lest that fact be deemed undisputed.").

NOT FOR PUBLICATION

The License Agreement granted defendants a license to operate the 96-room guest lodging facility located at Route 255 and I-80, Dubois, Pennsylvania (the "Facility") as a Ramada Inn for a term of fifteen years, during which defendants were permitted to use the Ramada marks with the operation and use of the Facility as part of Ramada's franchise system.[2]  (Id. ¶¶ 9, 11; Workman Aff. § 5.)  The Ramada marks are comprised of various federally registered trade names, service marks, logos and derivations thereof.  (Pl. Facts ¶ 5.)  The License Agreement required defendants to make renovations to the Facility in order to bring it into compliance with "System Standards," "Approved Plans," and/or a "Punch List," and to achieve and maintain certain scores on periodic quality assurance ("QA") inspections conducted by RWI.  (Workman Aff. Ex. A, § 3.1)  The Punch List provided a list of renovations to be completed within specified time frames ranging from 30 to 180 days.  (Workman Aff. Ex. A, Sch. B, Part III.)  Pursuant to sections 3.9, 4.5 and 4.8, Ramada retained the right to make changes to System Standards, to permit deviations from the System Standards, and to make unlimited "unannounced quality assurance inspections" to determine whether the Facility was in compliance with Ramada's quality requirements.  (Id. §§ 3.9, 4.5, 4.8.)  Sections 7, 18.3 and Schedule C of the License Agreement also obligated defendants to make certain periodic payments to Ramada for royalties,

---

[2]  Defendants Javaid Tarar and Tasneem Tarar provided Ramada a guaranty of RIP Management's obligations under the License Agreement and agreed that upon default by RIP Management, they would "immediately make each payment and perform[] each unpaid of unperformed obligation of [RIP Management] under the [License Agreement]."  (Workman Aff. Ex. B.)  Accordingly, the Court will refer to all obligations under the License Agreement as being those of defendants collectively, as opposed to those of RIP Management only.

NOT FOR PUBLICATION

service assessment, taxes, interest, reservation system user fees and other fees (the "Recurring

Fees").  (Id. §§ 7, 18.3, Sch. C.)

Under Sections 11.1 and 11.2 of the License Agreement, Ramada could terminate the

license, with notice to defendants, for reasons including: (1) failure to pay any amount due

Ramada under the License Agreement, (b) failure to remedy any other default of its obligations

under the License Agreement within 30 days after receipt of written notice from Ramada

specifying one or more defaults, and/or (c) receipt of two or more notices of default in any

one-year period, whether or not the defaults were cured.  (Id. §§ 11.1-11.2.)  Defendants agreed

that, in the event of a termination of the License Agreement pursuant to section 11.2, they would

pay liquidated damages to Ramada in accordance with a formula specified in the License

Agreement and to immediately cease using the Ramada marks.  (Id. §§ 12.1, 13.)

The License Agreement also contained a merger clause: the clause specified that the

License Agreement "is the entire agreement superseding all previous and oral and written

representations, agreements and understandings of the parties about the Facility and the License."

(Id. § 17.7.3.)  Defendants further agreed that there are "no express or implied covenants or

warranties, oral or written, between [Ramada] and [defendants] except as expressly stated" in the

License Agreement.  (Id. § 14.3.)

Defendants' Alleged Default and Termination of the License Agreement

Ramada conducted three successive QA inspections on February 4, 2004, September 15,

2004 and November 15, 2004.  (Pl. Facts ¶¶ 42-44.)  The Facility failed to receive passing scores

on all three inspections:  The Facility received a score of 229 on the inspection conducted on

**NOT FOR PUBLICATION**

February 4, 2004, a score of 329 on the September 15, 2004 inspection, and a score of 389 on the

November 19, 2004 inspection, all below the minimum score of 435.[3]  (Defs.' Counter-Statement

of Facts ("Def. Facts") ¶¶ 3, 9, 10, 21; Pl. Facts ¶¶ 14, 42-44; Workman Aff. Exs. C, D.)

Defendants were provided with notice of default after the first two failed inspections.  (Workman

Aff. Exs. C, D.)  Defendants do not dispute that these inspections yielded failing scores.  (Defs.'

Response to Pl. Facts ¶¶ 42-44.)  They, however, assert that the inspections were performed with

the "express purpose to fail when they should have received a passing score."  (Id.)

On December 14, 2004, Ramada terminated the License Agreement, advising defendants

to immediately discontinue the use of the Ramada marks and to pay liquidated damages and

outstanding Recurring Fees.  (Pl. Facts ¶ 45.)  Defendants have made no payments, disputing that

they have an obligation to pay them.  (Defs.' Response to Pl. Facts ¶ 55.)  Defendants also

dispute that they continued to use the Ramada marks, as alleged by Ramada, stating that they

"took down the signs."  (Thibodaux Aff., Ex. C. (Dep. of Javaid Tarar) at 139:10-13.)  Plaintiff,

however, has obtained a letter from defendants which appears to admit that the Ramada signs had

not been taken down as of November 15, 2005, nearly a year after the License Agreement was

terminated.  (Thibododaux Supp. Aff. Ex. A.)

On April 3, 2007, Ramada brought this action for liquidated damages, Lanham Act

damages, and Recurring Fees.  Defendants counterclaimed alleging four counts of breach of the

---

[3]  Ramada increased the minimum passing score to 435 from 400 during the term of the
License Agreement which defendants acknowledged.  (Pl. Facts ¶ 14.)

NOT FOR PUBLICATION

implied covenant of good faith and fair dealing.  Ramada now moves for summary judgment on

counts one, three, five, and seven of its complaint and dismissal of defendants' counterclaim.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-48, 106 S. Ct. 2505, 2510 (1986).  A factual dispute is material if, under the substantive

law, it would affect the outcome of the suit and it is genuine if a reasonable jury could return a

verdict for the non-moving party.  See Anderson, 477 U.S. at 248.  The moving party "always

bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct.

2548, 2553 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts" in question.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

(1986).  To survive a motion for summary judgment, the non-moving party must present "more

than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County

of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  The non-moving party must go beyond the

NOT FOR PUBLICATION

pleadings and, by affidavits or other evidence, designate specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 323-24.  "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment."  Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  See Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  See id. at 255; Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

## DISCUSSION

**I.**   **Plaintiff is Entitled to Summary Judgment on Defendants' Liability for Breach of Contract and Defendants' Counterclaim.**

Ramada seeks summary judgment on defendants' liability for breach of their obligations following the termination of the License Agreement, including their failure to remit outstanding Recurring Fees, liquidated damages, and other damages.  In opposing summary judgment, defendants contend that the termination of the License Agreement was wrongful because plaintiff unfairly conducted the quality assurance inspections, and unreasonably denied their requests for deviations from System Standards and Punch List.  Defendants contend that because there remains disputes of fact regarding these issues summary judgment is not appropriate.

7

NOT FOR PUBLICATION

First, the Court must determine whether the obligations of the parties under the License Agreement were clear and unambiguous.  New Jersey law governs this dispute by virtue of the choice of law clause in the License Agreement.  (Workman Aff. Ex. A, § 17.6.)  Under New Jersey law, if the terms of a contract are clear and unambiguous, the courts must enforce those terms as written.  See City of Orange Twp. v. Empire Mortgage Svcs., Inc., 341 N.J. Super. 216, 224, 775 A.2d 174, 179 (App. Div. 2001) (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717, 720 (1960); Levison v. Weintraub, 215 N.J. Super. 273, 276, 521 A.2d 909, 910 (App. Div. 1987), cert. denied, 107 N.J. 650, 527 A.2d 470 (1987)).  Whether a contract provision or term is clear or ambiguous is a question of law and therefore suitable for a decision on a motion for summary judgment.  See Driscoll Const. Co., Inc. v. State, Dept. of Transportation, 371 N.J. Super. 304, 313-14, 853 A.2d 270, 276 (App. Div. 2004).  "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." M.J. Paquet, Inc. v. New Jersey Dep't of Transp., 171 N.J. 378, 396, 794 A.2d 141, 152 (2002) (citation omitted).

A review of the relevant provisions of the License Agreement leads this Court to conclude that the language with respect to Ramada's right to conduct unlimited inspections and to terminate following unsatisfactory inspections is not ambiguous.  Defendants do not contend otherwise.  The License Agreement obligated defendants to complete certain renovations to the Facility within specified time frames ranging from 30 days to 180 days.  (Workman Aff. Ex. A, Sch. B, Part III.)  Defendants further agreed to achieve and maintain certain scores on periodic quality assurance inspections conducted by RWI.  (Workman Aff. Ex. A, § 3.1.)  Pursuant to

8

NOT FOR PUBLICATION

sections 3.9, 4.5 and 4.8, Ramada retained the right to make changes to System Standards, to permit deviations from the System Standards, and to make unlimited "unannounced quality assurance inspections" to determine whether the Facility was in compliance with Ramada's quality requirements.  (Id. §§ 3.9, 4.5, 4.8.)  Ramada had the right the terminate the agreement for defendants' failure to remedy any default of its obligations under the License Agreement within 30 days after receipt of written notice from Ramada specifying one or more defaults.  (Id. §§ 11.1-11.2.)  The License Agreement was also subject to termination if defendants received two or more notices of default in any one-year period, whether or not the defaults were cured.  (Id. § 11.2.)  It is undisputed that defendants failed to make the required renovations by the agreed deadlines and that defendants received three consecutive failing scores on the quality assurance inspections.  (Def. Facts ¶¶ 3, 9, 10, 21; Pl. Facts ¶¶ 14, 42-44; Workman Aff. Exs. C, D.)  As a result of the failing inspection scores, defendants received two notice of default in 2004.  (Workman Aff. Exs. C, D.)  The License Agreement clearly entitled Ramada to terminate the License Agreement for defendants' repeated default.  By failing to pay the outstanding fees, liquidated damages, and carry out other post-termination obligations,  defendants have undisputably breached the License Agreement.

As an apparent defense to the breach, defendants claim that Ramada unfairly and inconsistently conducted the quality assurance inspections, presumably, to force defendants into default.  Defendants do not point to any express provision in the License Agreement that obligated Ramada to conduct quality assurance inspections in a certain manner.  However, it is clear that Ramada was required to conduct them in good faith.  New Jersey law reads into every

NOT FOR PUBLICATION

contract a covenant of good faith and fair dealing.  See Sons of Thunder, Inc. v. Borden, Inc., 148

N.J. 396, 420, 690 A.2d 575, 587 (1997) (citing cases).  Although the License Agreement

disclaimed any implied covenants, (id. § 14.3), the Court finds that this blanket provision did not

waive Ramada's duty to do nothing "which will have the effect of destroying or injuring the right

of the other party to receive the fruits of that contract."  See Wade v. Kessler Inst., 172 N.J. 327,

340, 798 A.2d 1251, 1259 (2002).  The implied covenant of good faith and fair dealing, however,

cannot override express terms of a contract, see Sons of Thunder, 148 N.J. at 419, 690 A.2d at

586, and may not "impose a condition in direct contravention of an unequivocal provision in a

contract covering the identical subject."  Borbely v. Nationwide Mut. Ins. Co., 547 F. Supp. 959,

975 (D.N.J. 1981).  As a threshold requirement, a party bringing a bad faith claim must show that

the other party acted in bad faith or with improper motive.  See Bruswick Hills Racquet Club,

Inc. v. Route 18 Shopping Center Assoc., 182 N.J. 210, 231, 864 A.2d 387, 399 (2005) ("an

allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract

and absent an improper motive"); Wilson v. Amerada Hess Corp., 168 N.J. 236, 251, 773 A.2d

1121, 1130 (2001) ("Without bad motive or intention, discretionary decisions that happen to

result in economic disadvantage to the other party are of no legal significance.").

        Rather than make the required showing of bad faith or ill motive, defendants challenge

the accuracy of the QA inspections, focusing on inconsistent deductions for certain items and

citing them as evidence that plaintiff "would modify its criteria during the various inspections."

(Defs.' Opp'n Br. at 10.)  Defendants repeat that they voiced "strenuous" and "vehement"

disagreement with the inspection reports but have not produced a dollop of evidence that the

NOT FOR PUBLICATION

inspections were conducted in bad faith or with ill motive.  Instead, defendants acknowledge that they failed to complete the extensive renovations they agreed to carry out in the License Agreement.  (Thibodaux Aff. Exs. E-F.)  In entering the License Agreement, Ramada expressly relied on defendants' promise to improve the Facility in accordance with Ramada's quality standards in a timely manner.  (Workman Aff. Ex. A. § 3.1.)  Defendants' accusation that plaintiff acted in bad faith by demanding defendants to perform the obligations they expressly agreed to rings hollow.  The Court is further unpersuaded by defendants' argument that plaintiff cannot now offer the failure to complete the required renovations, according to the Punch List, as the basis for terminating the License Agreement because plaintiff only cited the failure to achieve passing scores on the inspections as the reason.  The distinction between the Punch List and the inspections is a false one as the inspections clearly referenced the Punch List and deducted points for failure to complete the Punch List renovations.  (Workman Supp. Aff. Exs. A-C.)  Defendants have also failed to submit any evidence to infer ill motive or bad faith from Ramada's refusal to grant certain waiver requests.

Although defendants wish that "substantial improvements" and a trend of increasing, yet failing, inspection scores satisfied their obligations under the License Agreement, that is not the agreement they signed.  It is well-settled that courts will not write a contract more favorable to a given party than the agreement they chose to enter into.  See City of Orange, 341 N.J. Super at 224, 775 A.2d at 179 (courts cannot "remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other") (citing James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720, 721

NOT FOR PUBLICATION

(1950)).  The variance in the grading of the Facility by different inspectors, and plaintiff's failure

to grant certain waivers do not support an inference that plaintiff intentionally assigned failing

scores to the inspections to deprive defendants of the benefits of the contract.  Because there is

no genuine issue of material fact regarding a material breach by plaintiff that would excuse

defendants' performance under the License Agreement, the purported defense must fail.  Plaintiff

is entitled to summary judgment on the issue of liability on counts three (liquidated damages),

five (Recurring Fees) and seven (damages against Guarantors) of its complaint.  Plaintiff is

further entitled to summary judgment on counts three ("unfair inspections") and four ("improper

denial of waiver requests") of defendants' counterclaim because defendants have not adduced

any evidence that could demonstrate that plaintiff acted in bad faith or with improper motive.

     Summary judgment is also granted to plaintiff on defendants' remaining counterclaims of

breach of the implied covenant because they seek to imply obligations that contravene express

terms of the License Agreement.  Defendants' complaint that plaintiff acted in bad faith by

"failing to disclose [plaintiff's] entering into a license agreement with a hotel twenty (20) miles

away" (Defs.' Amended Answer and Counterclaim, Count One) fails because Ramada expressly

reserved a right to license a Ramada facility at any location other than the parcel of land owned

by defendants.  (Workman Aff., Ex. A § 15.3.)  The License Agreement further disclaimed any

"territorial rights or agreements between the parties."  (<u>Id.</u>)  Equally unavailing is defendants'

accusation that plaintiff improperly terminated the License Agreement after assuring defendants

they would have "sufficient time" to complete the necessary repairs.  (Defs.' Amended Answer

and Counterclaim, Count Two.)  Defendants expressly agreed to complete improvements and

NOT FOR PUBLICATION

renovations in the Punch List within specific time periods, ranging from 30 days to 180 days.

(Workman Aff., Ex. A, Sch. B.)  As the implied covenant of good faith and fair dealing cannot

modify the express terms of the contract defendants agreed to, see Sons of Thunder, 148 N.J. at

419, 690 A.2d at 586, both first and second counts of the counterclaim are dismissed.

**II.     Summary Judgment on Defendants' Liability under the Lanham Act is Appropriate.**

Plaintiff also seeks summary judgment on its claims under Sections 32 and 43(a) of the

Lanham Act for defendants' unauthorized use of the Ramada marks after the termination of the

License Agreement.  Section 32 of the Lanham Act prohibits the unauthorized

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of
> a registered mark in connection with the sale, offering for sale, distribution, or
> advertising of any goods or services on or in connection with which such use is
> likely to cause confusion, or to cause mistake, or to deceive ....

15 U.S.C. § 1114.  Further, Section 43(a) of the Lanham Act provides that:

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> > affiliation, connection, or association of such person with another person,
> > or as to the origin, sponsorship, or approval of his or her goods, services,
> > or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a).  The law governing section 43(a), which protects unregistered trademarks,

generally follows the law governing infringement of registered trademarks protected under

section 32.  See Bijur Lubricating Corp. v. Devco. Corp., 332 F. Supp. 2d 722, 726-27 (D.N.J.

NOT FOR PUBLICATION

2004) (citing Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 206 n.1 (3d Cir. 2002)).  While the following discussion regarding the "validity of a trademark" and the "authority to use a trademark" pertains to only section 32 of the Lanham Act, the third element, "likelihood of confusion," pertains to both sections 32 and 43(a).

To prevail on a section 32(a) claim, plaintiff must first demonstrate that the trademarks were valid.  Federal registration of a trademark is prima facie evidence of a mark's validity.  See 15 U.S.C. § 1115(a).  The Ramada marks have been registered with the United States Patent and Trademark Office.  (Pl. Facts ¶¶ 4, 7-8.)  Defendants do not dispute that plaintiff owns the Ramada marks or that the marks are valid.

The second element that plaintiff must establish is whether defendants' use of the Ramada marks was unauthorized.  Termination of a trademark license precludes any further use of the trademark by the licensee.  See S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992).  Defendants dispute that they continued to use the Ramada marks after Ramada terminated the License Agreement on December 14, 2004, asserting that they "took down the signs" within "days" of the termination and that one of the signs was "broken and never worked." (Def. Facts ¶¶ 24-26.)  These assertions are supported only by Javaid Tarar's deposition testimony.  Plaintiff counters that defendants continued to use the marks until at least July 2, 2005, the date that plaintiff conducted a post-termination inspection.  (Pl. Facts ¶¶ 50-54.)  The inspection report, which attaches photographs, makes clear that at least two Ramada signs remained as of July 2, 2005.  In addition, a letter dated November 15, 2005 from RIP Management to Ramada confirmed that the sign had not been taken down as of that date and that

14

**NOT FOR PUBLICATION**

the earliest it would be removed was November 21, 2005.  (Thibodaux Supp. Aff., Ex. A.)

Defendants' conclusory statement that they took down the signs within days cannot create a

genuine issue of material fact regarding their unauthorized use in light of the documentary

evidence and their own admission that the signs had not been removed long after the License

Agreement was terminated.  Plaintiff has made the required showing as to the second element of

its section 32 claim.

Finally, to prevail on a claim under either of sections 32 and 43(a), "the owner of a valid

and legally protectable mark . . . must show that a defendant's use of a similar mark for its goods

'causes a likelihood of confusion.'"  Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708-09 &

n. 8 (3d Cir. 2004) (citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198,

210 (3d Cir. 2000).  The Third Circuit has held that there is a great likelihood of confusion where

a party uses the exact same trademark.  Jiffy Lube, 968 F.2d at 375 (citing Optician Ass'n of Am.

v. Independent Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990)).  See also Structures, inc. v.

J.P. Structures, Inc., 130 F.3d 1185, 1189-1191 (6th Cir. 1997) (when identical marks are used,

likelihood of confusion is established as a matter of law.)  As a matter of law, defendants'

continued use of the its former franchisor's marks caused a likelihood of confusion about the

Facility's identity as a Ramada Inn.  Plaintiff is entitled to summary judgment on the issue of

liability on its Lanham Act claims.

**III.    Plaintiff is Entitled to Summary Judgment on Damages**.

Ramada also moves for summary judgment with respect to the following damage claims:

outstanding Recurring Fees in the amount of $8,877.43 (counts five and seven), liquidated

**NOT FOR PUBLICATION**

damages in the amount of $192,000.00 (count three and seven) and infringement damages, trebled pursuant to the Lanham Act, in the amount of $71,819.16 (count one). Ramada also seeks prejudgment interest on Recurring Fees and liquidated damages as well as attorneys' fees and costs pursuant to the terms of the License Agreement.

      A.     Recurring Fees

Plaintiff seeks to recover from defendants the outstanding Recurring Fees in the principal amount of $8,877.43. The License Agreement and Guaranty obligated defendants to pay Recurring Fees to plaintiff, pursuant to section 7, section 18.3 and Schedule C of the License Agreement. (Workman Aff. Ex. A, §§ 7, 18.3 and Sch. C.) In the event of default by RIP Management, Javaid Tarar and Tasneem Tarar agreed to make "each payment" and "perform each unpaid or unperformed obligation of the licensee under the agreement." (Workman Aff. Ex. B.) Defendants admit that they have not made the payments of Recurring Fees but dispute that they are obligated to make such payments, presumably, because they believe that the License Agreement was wrongfully terminated. (Defs.' Response to Pl. Facts ¶ 55.) The Court has already decided that issue against them. No disputes of material fact remain regarding the amount of the Recurring Fees owed or defendants' liability to pay. Summary judgment on plaintiff's Recurring Fees claims in counts five and seven is granted.

      B.     Liquidated Damages

Ramada also requests that this Court enforce the liquidated damages provision of the License Agreement. Whether an unambiguous liquidated damages clause is valid and enforceable is a question of law for the court. See Naporano Assocs., L.P. v. B & P Builders,

16

NOT FOR PUBLICATION

309 N.J. Super. 166, 176, 706 A.2d 1123, 1127 (App. Div. 1998) (citing Wasserman's, Inc. v. Middletown, 137 N.J. 238, 257, 645 A.2d 100, 110 (1994)).  The validity of a liquidated damages clause depends on whether it reasonably forecasts the harm resulting from the breach, where that harm cannot be easily or accurately estimated.  See Wasserman's, 137 N.J. at 249-50, 645 A.2d at 106-07; Monsen Eng'g Co. v. Tami-Githens, Inc., 219 N.J. Super. 241, 252, 530 A.2d 313, 318 (App. Div. 1987).  In examining the liquidated damages clause, the court must consider the reasonableness of the clause "either at the time of contract formation or at the time of the breach."  Naporano Assocs., 309 N.J. Super. at 176, 706 A.2d at 1128 (quoting Wasserman's, 137 N.J. at 251, 645 A.2d at 107).  Under New Jersey law, a liquidated damages clause in a commercial contract is presumptively valid where the parties have comparable bargaining power.  See Wasserman's, 137 N.J. at 252, 645 A.2d at 108.  The party opposing enforcement of the clause has the burden "to offer proof of contractually acceptable excuses in order to avoid the application of the liquidated damages clause."  Monsen, 219 N.J. Super. at 250, 530 A.2d at 317.

The liquidated damages clause, contained in section 12.1 of the License Agreement, provides that:

> If [Ramada] terminate[s] the License [Agreement] under Section 11.2 ..., [RIP Management] will pay [Ramada] within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued [Recurring Fees] during the immediately preceding 24 full calendar months (or the number of months remaining in the unexpired Term at the date of termination, whichever is less).  If the Facility has been open for less than 24 months, then the amount shall be the average monthly [Recurring Fees] since the Opening Date multiplied by 24. [RIP Management] will also pay any applicable Taxes assessed on such payment ....  Liquidated Damages will not be less than the product of $2,000.00 multiplied by the number of guest rooms [in the Facility].

17

NOT FOR PUBLICATION

(Workman Aff. Ex. A, § 12.1.)   Defendants have not advanced specific objections to the

enforcement of the liquidated damages provision.

The Court concludes that the clause provides a reasonable forecast of provable injury

resulting from the breach which cannot be easily estimated.  The amount of the injury, Recurring

Fees over the fifteen year term of the License Agreement, cannot be easily estimated because it is

dependent on a percentage of monthly gross room revenues which can vary considerably from

month to month.  Courts in similar contexts have recognized the difficulty in estimating

damages, "particularly in light of the many variables that must be considered in the hotel

industry."  See Travelodge Hotels, Inc., v. Colfax Avenue Irrevocable Trust, No. 01-3586, slip

op. at 9 (D.N.J. July 14, 2004) (citing Shree Ganesh, Inc. v, Days Inn Worldwide, Inc., 192 F.

Supp. 2d 774, 786 (N.D. Ohio) (applying New Jersey law)).  The amount plaintiff seeks, $2,000

multiplied by the number of guest rooms, is not unreasonable given that the term of the License

Agreement is fifteen years and substantial time is likely required to replace the terminated

licensee.  Defendants have not put forth any evidence indicating that the damages are

unreasonable, that the liquidated damages arose from a lack of bargaining power, nor established

any contractually acceptable excuses to avoid the application of the liquidated damages clause.

The Court grants summary judgment in favor of plaintiff as to the liquidated damages claims of

counts three and seven of the complaint.

   C.  Lanham Act Damages

Having found that defendants have violated the Lanham Act, the Court next determines

what damages, if any, should be awarded.  Plaintiff claims damages under the Lanham Act for

NOT FOR PUBLICATION

defendants' unauthorized use of the marks during the period of infringement from December 14, 2004 to July 2, 2005.  Specifically, plaintiff seeks compensatory damages in an amount based on the Recurring Fees it would have received during the period of infringement, treble damages of that amount due to defendants' intentional and deliberate use of its marks following termination, and attorneys' fees.

Under the Lanham Act, damages for trademark infringement may include any damages sustained by the trademark owner. See 15 U.S.C. § 1117(a).  Lost royalties or franchise fees during the infringement period are a proper measure of damages under the Lanham Act.  See Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc., No. 03-799, 2005 WL 2656676, *11 (citing Ramada Inns, Inc., v. Gadsden Motel Co., 804 F.2d 1562, 1565 (11th Cir. 1987) (upholding award based on franchise fees or royalties lost during infringement period)).  In addition, if the Court finds that the defendant's infringement was intentional and deliberate, it may treble the amount of actual damages as well as award reasonable attorneys' fees.  See 15 U.S.C. § 1117(b).

Ramada seeks $23,939.72 in lost Recurring Fees for the infringement period which began on December 14, 2004, the date that Ramada terminated the License Agreement, and lasted until July 2, 2005, the date that Ramada conducted its post-termination inspection and confirmed defendants' continuing use of the Ramada marks.  Ramada arrived at this estimate by averaging the monthly gross revenue from August 2003 to December 2004, multiplying that amount by 8.5%, the Recurring Fees rate for the Facility pursuant to sections 7 and 18.3 and Schedule C of the License Agreement, and then multiplying that figure by seven months.  (Pl. Facts ¶¶ 67-70.)

NOT FOR PUBLICATION

The Court agrees with plaintiff's calculation of damages except for the rounding up of the claimed infringement period up to seven months from the claimed infringement period which the Court calculates to be six months and 19 days. Plaintiff shall submit a recalculation of the infringement using the latter figure.

The Court also finds that trebling of damages is appropriate as defendants' infringement was willful and deliberate. Despite repeated demands by plaintiff to remove all Ramada marks, defendants failed to do so for over six months. See Part II. supra. Plaintiff is therefore entitled to treble damages under 15 U.S.C. § 1117(b) and reasonable attorney's fees.

      D.      Prejudgment Interest, Costs and Attorney's Fees.

Finally, plaintiff requests that it be awarded prejudgment interest on liquidated damages and Recurring Fees, costs and attorneys' fees. Under New Jersey law, "the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478, 541 A.2d 1063, 1070 (1988)). Pre-judgment interest is awarded in order "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." Cooper, 63 F.3d at 284 (quoting Ellmex Constr. Co. v. Republic Ins. Co. of Am., 202 N.J. Super. 195, 212-13, 494 A.2d 339, 349 (App. Div. 1985)). The "basic consideration" in awarding pre-judgment interest is "that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the pre-judgment period during which the defendant had the benefit of money to which the plaintiff is found to have been earlier

20

NOT FOR PUBLICATION

entitled." County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61, 891 A.2d 600, 608

(2006).  Prejudgment interest in a commercial case may be determined by a provision in a

contract.  See Utica Mut. Ins. Co. v. DiDonato, 187 N.J. Super 30, 43, 453 A.2d 559, 566 (App.

Div. 1982) ("Where the parties have agreed upon the precise method by which damages shall be

computed and assessed, the court is bound by their contract.")..

Because Ramada has been denied use of its money, awarding pre-judgment interest is

appropriate.  Section 7.3 of the License Agreement specifies a rate of 1.5% per month on all

payments overdue.  (Workman Aff. Ex. A, § 7.3.)  Section 12.1 governing liquidated damages

provides for the assessment of interest under section 7.3 if defendants fail to pay the liquidated

damages within 30 days of the termination.  (Workman Aff. Ex. A, § 12.1.)  Ramada shall

submit an appropriate proposed form of Order to the Court calculating the interest accrued on the

unpaid Recurring Fees and liquidated damages from January 13, 2005 (30 days after the date of

the termination) to the date of the accompanying Order.

Under New Jersey law, parties may contract to shift the fees and costs in the event of

litigation between them.  See N. Bergen Rex Transport, Inc., v. Trailer Leasing Co., 158 N.J.

561, 569-70, 730 A.2d 843, 848 (1999).  Section 17.4 of the License Agreement provides that a

"non-prevailing party will pay all costs and expenses, including reasonable attorney's fees,

incurred by the prevailing party to enforce [the License] Agreement ...."  (Workman Aff. Ex. A, §

17.4.)  The Guaranty signed by Javaid and Tasneem Tarar incorporates by reference Section 17.4

of the License Agreement.  (Workman Aff. Ex. B.)

21

**NOT FOR PUBLICATION**

In the absence of countervailing considerations, and defendants have suggested none, the Court finds that Ramada is entitled to recover reasonable attorney's fees and costs incurred in connection with this breach of contract action, as expressly agreed to by defendants in the License Agreement and Guaranty.  The Court directs Ramada to submit an affidavit establishing its attorney's fees and costs in accordance with Local Civil Rule 54.2.

## CONCLUSION

The Court grants summary judgment in favor of plaintiff on the first, third, fifth and seventh counts of its complaint.  Ramada has represented to the Court that if summary judgment is granted on these counts, it will dismiss counts two, four, and six.  (Pl.'s Br. at 1 n.1.)  The Court will hold Ramada to its representation and expects such dismissal to be filed forthwith. The Court also dismisses defendants' counterclaim in its entirety.


s/William H. Walls
United States Senior District Judge

**NOT FOR PUBLICATION**

**Appearances:**

David S. Sager, Esq.
Roy Joseph Thibodaux III, Esq.
Day Pitney LLP
P.O. Box 1945
Morristown, NJ 07962-1945
    Attorneys for Plaintiff Ramada Worldwide, Inc.

Mark W. Catanzaro, Esq.
Blason IV - Suite 208
513 S. Lenola Road
Moorestown, NJ 08057
    Attorney for Defendants RIP Management Group, Inc., Javaid M. Tarar and
    Tasneem Tarar